IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

QUARMARDEN Q. BRAND,
    Plaintiff,

vs.                                                3:10cv377/LAC/MD

OFFICER HAMILTON, et al.
    Defendants.

## REPORT AND RECOMMENDATION

This cause is before the court upon plaintiff's civil rights complaint filed pursuant to Title 42 U.S.C. §1983. (Doc. 1). Leave to proceed *in forma pauperis* was granted and no initial partial filing fee was assessed (doc. 4).

Since plaintiff is proceeding *in forma pauperis*, the court is required to dismiss the case at any time if it determines that the action or appeal is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(B). Because plaintiff fails to state a claim on which relief may be granted, dismissal of plaintiff's case is warranted.

Plaintiff was incarcerated at Santa Rosa County Jail at the time the events giving rise to this complaint took place. He names Officers Hamilton, Tolbert and Baker as defendants in this action. Plaintiff contends that on September 17, 2010 Officer Hamilton kicked him in the ankle as he was sleeping to rouse him during Hamilton's routine inmate headcount. Hamilton subsequently verbally threatened plaintiff and called him names. He also moved plaintiff to a different dorm where he

told officers to put plaintiff in a "boat"[1] rather than allow him to have a bottom bunk, although such bunks were available. After Hamilton left, plaintiff asked to speak to Officer Tolbert who then told plaintiff to take possession of bottom bunk #18. When, after 20 minutes, there was still some confusion, Officer Baker allegedly told plaintiff to "get on a boat." When plaintiff informed her that he had a low bunk pass, she let him stay on bunk #18 without further discussion.

In plaintiff's statement of claims, plaintiff appears to express that he does not know his constitutional rights by heart, but he knows that "he" violated plaintiff's rights. As relief, plaintiff seeks to be moved from the jail. The complaint is signed on September 19, 2010, two days after the incident of which plaintiff complains.

Under the pre-PLRA version of § 42 U.S.C.A. § 1997e, courts had the option to stay actions not administratively exhausted, if the court found this to be "appropriate and in the interests of justice." 42 U.S.C. § 1997e(a)(1)(1994)(amended 1996). By contrast, the current version provides that:

> **(a) Applicability of administrative remedies**
> **No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.**

42 U.S.C.A. § 1997e(a) (West Supp.1997). Therefore, the plain language of the statute makes the exhaustion requirement a mandatory prerequisite to filing suit. *See Leal v. Georgia Dept. Of Corrections,* 245 F.3d 1276 (11th Cir. 2001); *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Miller v. Tanner,* 196 F.3d 1190, 1193 (11th Cir. 1999); *Harris v. Garner,* 190 F.3d 1279, 1286 (11th Cir. 1999); *Alexander v. Hawk*, 159 F.3d 1321, 1329 (11th Cir. 1998). The exhaustion requirement applies to all inmate suits about any aspect of prison life. *Woodford v. Ngo,* 126 S.Ct. 2378, 2382,

---

[1]From the allegations in the complaint, a boat appears to be an alternative sleeping arrangement on the floor, rather than a bunk..

*Case No: 3:10cv377/LAC/MD*

165 L.Ed.2d 368 (2006); *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 121 S.Ct.1819, 1825, 149 L.Ed.2d 958 (2001). Both the Supreme Court and the Eleventh Circuit have recognized myriad policy reasons favoring exhaustion. In *Woodford v. Ngo,* the Supreme Court recognized the general benefits of exhaustion as follows:

> First, exhaustion protects "administrative agency authority." Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures."
> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."

*Woodford v. Ngo,* 126 S.Ct. at 2385 (internal citations omitted). The Eleventh Circuit has also described seven policy reasons favoring an exhaustion requirement:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting *Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998)). The exhaustion process is mandatory, and cannot be waived even when the process is futile or inadequate. *Bryant v. Rich,* 530 F.3d 1368, 1373 (11th Cir. 2008) (citing *Alexander,* 159 F.3d at 1325-26).

Even though plaintiff may have pursued and completed exhaustion after his case was filed, it would still be subject to dismissal, as he did not exhaust his administrative remedies before suit was commenced. *Johnson v. Jones,* 340 F.3d 624, 627 (8th Cir. 2003) ("court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred" and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory"); *Jackson v. District of Columbia*, 254 F.3d 262, 268-69 (D.C.Cir.2001) (rejecting argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.")); *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."); *see also Nyhuis v. Reno*, 204 F.3d 65, 71 (3rd Cir. 2000) ("Allowing the federal courts to fashion prison remedies before the prisons themselves have had the opportunity (and have the ability) to do so, is surely not what Congress intended when it enacted the [Prison Litigation Reform Act]."); *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir.1998) ("[E]xhaustion is now a pre-condition to suit.... Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply."); *Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir.1997) ("Congress specifically amended the statute to ... requir[e] federal prisoners to exhaust all administrative remedies before bringing ... a claim under 42 U.S.C. § 1983.")).

Clearly, the two days between the event complained of and the signing of the complaint would not have been sufficient time to pursue and exhaust administrative remedies available to him. Therefore, because plaintiff cannot cure the defect in his failure to exhaust his administrative remedies by post-filing exhaustion, he has failed

to state a claim and his case must be dismissed without prejudice. *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998) (citation omitted) ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.")

Even if plaintiff had exhausted his administrative remedies, or was able to argue that there is no grievance procedure available at the jail, his complaint is subject to dismissal for failure to state a substantive constitutional claim.

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

> 1. whether the conduct complained of was committed by a person acting under color of state law; and
>
> 2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988) (citations omitted); *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (citing *West*).

Frankly, it is not apparent why Officers Tolbert and Baker are named as defendants in this action as these officers either assigned plaintiff a bottom bunk or permitted him to stay there. Thus, they committed no wrong against him. Plaintiff clearly does not state a constitutional or any other kind of claim against these individuals and they should be dismissed.

The remaining defendant, Officer Hamilton, is alleged to have (1) kicked plaintiff in the ankle to rouse him; (2) verbally threatened plaintiff with physical assault; (3) taken away plaintiff's "blues" and issued him an orange jumpsuit[2]; (4) asked other officers not to honor plaintiff's low bunk pass and instead place him in a "boat." These claims, taken either individually or together do not rise to the level of a constitutional violation.

---

[2] The significance of this is not clear to the court.

*Case No: 3:10cv377/LAC/MD*

To the extent that plaintiff claims that Hamilton's kick in his ankle was an improper use of force, because plaintiff was a pretrial detainee at the time of the alleged misconduct,[3] the relevant constitutional guarantee is not the Eighth Amendment's prohibition against cruel and unusual punishment applicable to convicted prisoners, but rather the Due Process Clause of the Fourteenth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008); *Burnette v. Taylor,* 533 F.3d 1325, 1330 n.4 (11th Cir. 2008); *Cottone v. Jenne*, 326 F.3d 1352, 1356 n. 4 (11th Cir. 2003); see also *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008) ("If you are beaten to a pulp before you are convicted, your remedy is under the Fourth Amendment; after, under the Eighth Amendment."). Whether a jailer's use of force is excessive, and thus violates the inmate's Fourteenth Amendment right to be free from cruel and unusual punishment, depends on whether the jailer's act "shocks the conscience," *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force "'was applied ... maliciously and sadistically for the very purpose of causing harm.'" *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)). To evaluate whether actions shock the conscience, we consider the following factors: (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury. *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085. To the extent a kick in the ankle just hard enough to rouse a sleeping inmate can be considered "force," the court does not find that the use of such "force," which apparently caused no injury, neither "shocks the conscience" nor states a constitutional violation.

Plaintiff's claim of verbal harassment is not cognizable under section 1983. As the Fifth Circuit has stated:

---

[3] Plaintiff pleaded guilty or nolo to a charge of aggravated battery with a deadly weapon in Escambia County Court case 2010 CF 001917 on October 6, 2010.

*Case No: 3:10cv377/LAC/MD*

> as a rule, mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations .... Were a prisoner ... entitled to a jury trial each time he was threatened with violence by a prison guard, even though no injury resulted, the federal courts would be more burdened than ever with trials of prisoner suits ....

*McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (quotations and citations omitted). *See generally Evans v. City of Zebulon, GA,* 351 F.3d 485, 495-496 (11th Cir. 2003) (verbal taunts by other inmates or government officials do not violate constitutional rights), *vacated by* 364 F.3d 1298 (11th Cir. 2004)*, rehearing en banc granted on other grounds, Evans v. Stephens,* 407 F.3d 1272 (11th Cir. 2005)[4]; *see also Barney v. Pulsipher*, 143 F.3d 1299, 1310 n. 11 (10th Cir. 1998) ("[A]cts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment."); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)(mere allegations of verbal abuse do not present actionable Section 1983 claim); *Swoboda v. Dubach* 992 F.2d 286, 290 (10th Cir. 1993)(allegations that officers threatened to kill inmate not cognizable under Section 1983); *Hopson v. Fredricksen*, 961 F.2d 1374, 1378 (8th Cir. 1992)(mere verbal threats generally do not constitute a Section 1983 claim); *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993)(verbal harassment of prisoner failed to state a claim under the Eighth Amendment because the words did not

---

[4] (Citation from *Evans*: "This Court, for example, has held that verbal taunts by other inmates do not pose a serious risk to the prisoner's health or safety under the Eighth and Fourteenth Amendments. *496 Edwards v. Gilbert, 867 F.2d 1271, 1274 n. 1 (11th Cir.1989). Cf. McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.1983) (threatening language and gestures of a corrections officer do not generally violate an inmate's Eighth Amendment rights). Other courts have held that verbal threats and harassment by a government official do not generally violate substantive due process. King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir.1997); Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir.1995); Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir.1991). Some courts have applied this principle to the arrest context. See Hopson v. Fredericksen, 961 F.2d 1374, 1378-79 (8th Cir.1992) (officer's statement during an arrest that he would knock the arrestee's teeth out and his use of a racial slur did not violate the Fourth Amendment); Keyes v. City of Albany, 594 F.Supp. 1147, 1155 (N.D.N.Y.1984) ("verbal abuse, including vile language and racial epithets" directed at bystanders during an arrest did not violate their constitutional rights). In light of this caselaw treating verbal abuse, even vile language and racial epithets, as insufficient to constitute a constitutional violation, we cannot conclude that it was clearly established that Stephens's taunts and threats of prison rape might so exacerbate the intrusiveness of the strip search as to violate the appellees' constitutional rights.

*Case No: 3:10cv377/LAC/MD*

terrorize the inmate with a threat of death); *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Ivey v. Williams*, 832 F.2d 950, 955 (6th Cir. 1987); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973); see also *Crenshaw v. City of Defuniak Springs*, 891 F.Supp. 1548, 1555 (N.D. Fla. 1995) ("verbal harassment and abusive language, while 'unprofessional and inexcusable,' are simply not sufficient to state a constitutional claim under Section 1983"); *Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D. N.Y. 1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right" under section 1983); *Partee v. Cook County Sheriff's Office,* 863 F.Supp. 778, 781 (N.D. Ill. 1994) (inmate's "allegations of verbal threats, racial epithets, and continued harassment" failed to meet objective component of Eighth Amendment); *Davis v. Sancegraw*, 850 F.Supp. 809, 813 (E.D. Mo. 1993) ("[v]erbal insults or threats generally do not rise to the level of a constitutional violation" except where they involve "a 'wanton act of cruelty' such that the inmate is in fear of 'instant and unexpected death at the whim of his bigoted custodians'").

Similarly, Officer Hamilton's alleged racial comments, while undoubtedly offensive and inappropriate, cannot form the basis of a §1983 claim. *See Evans v. City of Zebulon, GA,* 351 F.3d 485, 495-496 (11th Cir. 2003), *vacated by* 364 F.3d 1298 (11th Cir. 2004)*, rehearing en banc granted on other grounds, Evans v. Stephens,* 407 F.3d 1272 (11th Cir. 2005); *Haussman v. Fergus,* 894 F. Supp. 142, 149 (S.D. N.Y. 1995); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2nd Cir.1986); *Wright v. Santoro*, 714 F.Supp. 665, 666-67 (S.D.N.Y.) ("'discriminatory statements reflecting racial prejudice not actionable under §1983 where not shown to be connected with physical injury.'" (citation omitted)), aff'd, 891 F.2d 278 (2nd Cir.1989); *Kelly v. Rice,* 375 F.Supp.2d 203,

209-210 ("'the use of [vile] language, no matter how abhorrent or reprehensible, cannot form the basis for a §1983 claim.'") (citation omitted).

Plaintiff's remaining two issues with Officer Hamilton, about the change in his jail attire and his assertion that Officer Hamilton unsuccessfully attempted to prevent him from getting assigned to a lower bunk are frivolous.

Based on the foregoing, the court is satisfied that plaintiff's claim is subject to dismissal both for his failure to exhaust his administrative remedies and for his failure to allege a substantive constitutional violation against any of the named defendants.

Accordingly, it is respectfully RECOMMENDED:

That this cause be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

At Pensacola, Florida, this 27th day of October, 2010.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).